IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Carole Holloman, | ) | C/A No. 3:14-1136-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Department of Mental Health, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Carole Holloman, filed this action asserting claims of breach of contract and breach of contract with fraudulent intent associated with a Mediation Agreement, against her former employer, South Carolina Department of Mental Health.[1] In an order previously entered in this case, the Honorable Joseph F. Anderson, Jr., United States District Judge, adopted a Report and Recommendation finding that federal jurisdiction attaches to the enforcement of such an agreement. (See Report & Recommendation at 3-4, ECF No. 17 at 3-4; adopted by Order at 1-2, ECF No. 22 at 1-2. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 34.) Holloman filed a response in opposition (ECF No. 40), and the defendant filed a reply (ECF No. 41). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion for summary judgment should be granted.

---

[1] The parties entered into a Mediation Agreement on May 20, 2013 to resolve Holloman's claims of retaliation and race/age discrimination brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, et seq., against the defendant. (Mediation Agreement, ECF Nos. 34-3, 40-3.)



## BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to Holloman, to the extent they find support in the record. Holloman, who is African-American and over the age of forty, began her employment with the defendant on October 3, 1983 and was employed as a psychiatric nurse at the defendant's Kershaw County Mental Health Clinic from October 1984 until the date of her suspension on November 25, 2013. (Compl., ECF No. 1-1 at 3.) Holloman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") on October 18, 2012, alleging retaliation and discrimination by the defendants on the basis of race and age. (Id.) Holloman and the defendant participated in mediation on May 20, 2013 and entered into an agreement, which mandated that Holloman be given a monetary award, salary increase, and attorney's fees in exchange for withdrawal of her EEOC and SCHAC Charges of Discrimination. (Id.) The agreement also provided that the defendant would not discriminate or retaliate against Holloman for having filed such charges. (Id. at 4.)

In September 2013, Holloman applied for the position of Nurse Manager, for which she interviewed by telephone with Dr. Marian Dehlinger, Medical Director, who is identified as a Caucasian female. (Id.) In October 2013, Dr. Dehlinger issued Holloman a performance evaluation, and in November of 2013 the defendant awarded the Nurse Manager position to Julie M. Poston, R.N., identified as a Caucasian female who is younger than Holloman. (Id. at 4-5.) Poston became Holloman's direct supervisor and required Holloman to submit a medical excuse each time she utilized sick leave. (Id. at 5.) Poston issued Holloman a letter of suspension from her job on November 25, 2013 for an alleged violation of the defendant's Medicaid Policy. (Id.) Holloman did

not return to work after that date and retired on December 2, 2013.  Holloman seeks monetary damages in this case.  (Id. at 8.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine



whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Burden Shifting Framework in Employment Cases**

The parties appear to agree that Holloman must show a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., to establish a breach of contract in this case.  (See generally Def.'s Mem. Supp. Mot. Summ. J., ECF No. 34-1 at 20; Pl.'s Resp. Opp'n, ECF No. 40 at 17.)  A plaintiff asserting a claim of unlawful discrimination may proceed through two avenues of proof.  First, she may directly prove through direct or circumstantial evidence that a protected characteristic such as a disability was a motivating factor in the decision which adversely affected her.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013).  Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)).  "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the [] decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, when direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir.



2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII).  The defendant's burden "is one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

    In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original).  To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the defendant's proffered explanation is unworthy of credence.  Burdine, 450 U.S. at 256.

    "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148 (emphasis added).  However, "if the record



conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate.  Id.  Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  Id. at 148-49.  "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination."  Merritt, 601 F.3d at 294-95.

## C.    Holloman's Claims

### 1.    Breach of Contract

To prevail on a breach of contract claim under South Carolina law, a plaintiff bears the burden of establishing:  (1) the existence of a binding contract, (2) its breach, and (3) damages caused by the breach.  See Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962).  To establish a breach of the Mediation Agreement in this case, Holloman must also show discrimination and retaliation under the applicable federal statutes.[2]

---

[2] The defendant argues that Holloman failed to exhaust her administrative remedies with regard to any of the discrimination and retaliation claims presented in this case (Def.'s Mem. Supp. Mot. Summ. J., ECF No. 34-1 at 16) and correctly asserts that Holloman failed to address the defendant's argument regarding this lack of administrative exhaustion in her response in opposition (Def.'s Reply, ECF No. 41 at 1-2).  However, the defendant provides no conclusive authority to support its contention that a state law breach of contract claim arising out of a mediation agreement to resolve Title VII and/or ADEA claims must be separately exhausted.



### a.    Disparate Treatment Based on Race[3]

Holloman raises a claim of disparate treatment based on her race stemming from the defendant's alleged:    (1) suspension of Holloman's employment without pay; (2) alleged constructive termination of Holloman's employment; and (3) failure to select Holloman for a position for which she applied.[4]

The elements of a *prima facie* case of discriminatory disparate treatment are: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) different treatment from similarly situated employees outside of the protected class.  See Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  More specifically, with regard to a claim based on an alleged failure to promote, the *prima facie* case generally requires the plaintiff to show:  (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination.  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).  To establish constructive discharge, a plaintiff must establish that the defendants created intolerable working conditions in an effort to force her to resign.  Whitten v. Fred's, Inc., 601

---

[3] The defendant correctly asserts that Holloman's response in opposition fails to rebut the defendant's arguments associated with Holloman's discrimination and retaliation claims brought pursuant to the ADEA.  (Def.'s Reply, ECF No. 41 at 2.)  Thus, as argued by the defendant, Holloman appears to have conceded or abandoned her discrimination and retaliation claims under the ADEA.

[4] The court agrees with the defendant's contention that only conduct occurring after May 20, 2013, the date the parties entered into the Mediation Agreement, can provide a basis for any alleged breach of that contract.  (Def.'s Mem. Supp. Mot. Summ. J. at 21, ECF No. 34-1 at 21.)



F.3d 231, 248 (4th Cir. 2010), abrogated on other grounds by Vance v. Ball State Univ., 133 S. Ct. 2434 (2013). A constructive discharge occurs only when a reasonable person in the employee's position would have felt compelled to resign. See Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004).

### i.    Suspension and Constructive Discharge

The defendant argues that Holloman cannot meet the elements of a discrimination claim because she was not meeting its legitimate expectations at the time of her suspension. (Def.'s Mem. Supp. Mot. Summ. J., ECF No. 34-1 at 22-23.) When analyzing the third element to determine satisfactory job performance, a plaintiff's performance is evaluated at the time of the alleged adverse action, and courts have recognized that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans, 80 F.3d at 960-61). An employer's expectations of its employees are considered "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 518 (4th Cir. 2006).

In support of its summary judgment motion, the defendant provides deposition testimony from Richard B. Guess, Executive Director; Dr. Marian Dehlinger, Medical Director; and Julie M. Poston, Nurse Manager for the defendant's Santee-Wateree Community Mental Health Center,



which includes the Kershaw County Mental Health Clinic where Holloman worked.  (Dehlinger Dep., ECF No. 34-5; Poston Dep., ECF No. 34-26; Guess Dep., ECF No. 34-27.)  Each of these individuals testified that, in the summer of 2013, a patient complained about a charge billed to that patient by Holloman.  (Dehlinger Dep. at 46, ECF No. 34-5 at 7; Poston Dep. at 31, ECF No. 34-26 at 4; Guess Dep. at 16, ECF No. 34-27 at 3; see also Ticket Correction Email, ECF No. 34-24 at 2.) Guess testified that this complaint warranted a direct observation of Holloman and that two such observations were completed, once by Poston and once by Poston and Joseph V. Caputo, Compliance Officer for the Santee-Wateree Community Mental Health Center.  (Guess Dep. at 17-18, ECF No. 34-27 at 4, ECF No. 40-18 at 4.)  Poston testified that she first observed Holloman from a nursing room office adjacent to Holloman's office around the third week in September.  (Poston Dep. at 35-36, ECF No. 34-26 at 6-7.)  Poston testified that the time billed by Holloman on that day in September differed from the time she actually spent with a client.  (Id. at 38, ECF No. 34-26 at 9.)  On the second day in September during which Holloman was observed by Poston and Caputo, Poston testified that Holloman's billing was accurate.  (Id.)  In a deposition excerpt provided by Holloman, Caputo confirmed that Holloman's billing was correct on the date he observed her. (Caputo Dep. at 17-18, 21, ECF No. 40-16 at 4-5, 7.)  However, Caputo further testified that "there was some evidence to sort of validate that there should be some further data collection."  (Caputo Dep. at 22, ECF No. 34-30 at 5.)

The defendant further provides a declaration of Gail Hallinan, Qaulity Assurance Coordinator, who declares that she was directed by Caputo on September 27, 2013 to conduct a focus audit of Holloman for the prior six-month period.  (Hallinan Decl. at 1-2, ECF No. 34-25 at 2-3; see also Focus Audit email at 1, ECF No. 34-32 at 2.)  Hallinan states that a focus audit "is a



review of a specific issue that can be performed at any time it is requested by [] management." (Hallinan Decl. at 1, ECF No. 34-25 at 2.)  Hallinan states that she completed the focus audit in October 2013.  (Id. at 3, ECF No. 34-25 at 4.)  The defendant provides a copy of the Focus Audit Report, reflecting, among other issues, 106 instances where "Medication Monitoring forms [] did not have sufficient documentation to support the 45 minute bill-time" and billing for an exam where the documentation is missing and such missing documentation "could rise to the level of fraudulent practice" and "be deemed unethical."  (Focus Audit Report at 1-3, ECF No. 34-25 at 6-8.)  The Focus Audit Report further indicated that the "total potential payback for documentation not supporting a 45 min. Med Mon is $7,920."  (Id. at 3, ECF No. 34-25 at 8.)

Poston testified that the defendant's Human Resources department decided to suspend Holloman, and Poston signed and delivered Holloman's suspension letter dated November 25, 2013. (Poston Dep. at 42, ECF No. 34-26 at 10; see also Suspension Letter at 1, ECF No. 34-33 at 2.)  The suspension letter referenced the observations of Holloman in September 2013, and the Focus Audit Report indicated that Holloman's suspension was grievable and provided the method for filing a grievance.  (Suspension Letter at 1, ECF No. 34-33 at 2.)  Holloman did not file a grievance. (Holloman Dep. at 132, ECF No. 34-4 at 20.)  Guess testified that, if the investigation had resulted in a determination that Holloman's billing and documentation procedures were proper, Holloman could have returned to work and received back pay for the time of her suspension.  (Guess Dep. at 58-59; ECF No. 34-27 at 9-10.)  Holloman retired effective December 2, 2013, one week after the imposition of her suspension.  (Retirement Letter, ECF No. 34-34 at 2-3.)

Holloman's response in opposition to the defendant's motion for summary judgment indicates that she was copied on the email indicating that a patient had questioned a bill submitted



by Holloman, but felt confident that her billing was correct based on training by a former supervisor, Linda Lewis, and consultations with Quality Assurance about telephone billing. (Pl.'s Resp. Opp'n at 8-10, ECF No. 40 at 8-10.) Holloman further asserts that the defendant did not counsel her during the investigation into Holloman's billing practices or inform her of potential problems with her billing or documentation. (Id. at 12.) In support of her contention that she performed her job duties at a level that met the defendant's expectations, Holloman provides performance evaluations showing that, overall, she exceeded expectations for the one-year evaluation period ending on September 2, 2010 (Performance Evaluation, ECF No. 40-11 at 2-7), and met expectations for the evaluation periods ending on September 2, 2011 (Performance Evaluation, ECF No. 40-12), September 2, 2012 (Performance Evaluation, ECF No. 40-13), and September 2, 2013 (Performance Evaluation, ECF No. 40-14). However, Holloman provides no evidence to refute the deficiencies reflected in the Focus Audit Report of October 2013. As indicated previously, this report indicates several issues with Holloman's billing and documentation over the six-month period between March 27, 2013 and September 27, 2013, resulting in the defendant's payback of $7, 920 in medicaid funds. (Focus Audit Report, ECF No. 34-25 at 6-49.)

Therefore, Holloman's reliance on prior performance evaluations is not probative of whether she was meeting expectations at the time of the alleged adverse action. Even if this court were to assume, without deciding, that Holloman's suspension constituted a discharge instead of a voluntary separation based on her decision to retire, she cannot satisfy the third element of the *prima facie* test by demonstrating that she was fulfilling the defendant's legitimate expectations at the time of her suspension in November 2013. See Holland v. Wash. Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007); see also Coco, 128 F.3d at 1179. While Holloman may believe that her billing practices were

PJG

correct, such a belief is insufficient to establish a *prima facie* case.  See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.").

Further, while Holloman asserts that the defendant's proffered reason for suspension is false and pretextual, she provides no admissible evidence to show that the defendant's actions were based on her race, rather than her billing and documentation deficiencies.  Instead, Holloman asserts that she was the "only African American nurse employed by Santee Wateree and the only nurse subjected to harsh and intolerable treatment."  (Pl.'s Resp. Opp'n at 18, ECF No. 40 at 18.)  However, Holloman presents no evidence that any similarly situated person outside of her protected class was treated differently in regard to Holloman's suspension and alleged constructive discharge.  See Causey v. Balog, 162 F.3d 795, 801-03 (4th Cir. 1998) (holding that where race- and age-based animosity could be shown through differential treatment of similarly situated employees, plaintiff's conclusory statements that his employer "treated him less favorably than younger black and white employees of similar rank," "without specific evidentiary support, cannot support an actionable claim"); Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt., 816 F. Supp. 2d 297, 316 (M.D. La. 2011) ("In the context of a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated.") (citing Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009)).

Accordingly, the evidence in the record does not permit a reasonable inference that the defendant's stated reason for suspending Holloman was pretextual.  See Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (stating that the plaintiff must demonstrate by the



preponderance of the evidence that the proffered reason was "not its true reason [], but [was] a pretext for discrimination") (alteration in original) (internal quotation marks and citation omitted). As Holloman has failed to forecast evidence from which a reasonable jury could find that the defendant discriminated against her under Title VII based on Holloman's race with regard to her suspension and alleged constructive discharge, the defendant's motion for summary judgment should be granted as to such claims.

### ii.    Failure to Promote

In support of its motion for summary judgment with regard to Holloman's failure to promote claim, the defendant provides deposition testimony from Dr. Marian Dehlinger, Medical Director, who testified that Holloman applied for the Nurse Manager position in August of 2013. Dehlinger testified that she interviewed in person or by phone three internal candidates and two or three external candidates for the job, and that the three internal candidates were Carol Gandy, Julie Poston, and Carole Holloman. (Dehlinger Dep. at 56-57, ECF No. 34-5 at 9-10.) Dehlinger testified that she preferred that the Nurse Manager have a four-year degree and some supervisory experience, although she could not remember whether a four-year degree was required for the position. (Id. at 58, 60, ECF No. 34-5 at 11, 13.) Dehlinger recalled Holloman as having a two-year degree in nursing, no recent experience as a supervisor, and instances where she needed to be supervised regarding "harmonious relationships" with other staff. (Id. at 58, 66, ECF No. 34-5 at 11, 15.) Dehlinger testified that Poston, the applicant selected for the position, had recent experience as a supervisor, excellent problem-solving skills, and an endorsement by the previous Nurse Manager. (Id. at 60, ECF No. 34-5 at 13.) Dehlinger testified that the other internal applicant who was not



chosen for the position also had only a two-year degree and no supervisory experience. (Id. at 66, ECF No. 34-5 at 15.)

Holloman's response in opposition to the defendant's motion for summary judgment concedes that Poston has a four-year degree and "may have met the minimum qualifications for the [Nurse Manager] position." (Pl.'s Resp. Opp'n at 23, ECF No. 40 at 23.)  However, Holloman asserts that a four-year degree was not required for the position and that Poston was not more qualified than Holloman. (Id.) Holloman cites her thirty years of psychiatric nursing experience and supervisory experience, prior to 1983, as a charge nurse at Palmetto Richland Hospital as qualities that made her more qualified for the Nurse Manager position than Poston.[5]  (Id.; see also Pl.'s Resume, ECF No. 40-1 at 2-3; Poston's Resume, ECF No. 40-4 at 2-3; Holloman Dep. at 24, ECF No. 40-15 at 5.)

Based on the record in this case, even if the court were to find that Poston is similarly situated to Holloman in all relevant respects, see Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII and ADEA) (defining "similarly situated");[6] see also Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"), the court concludes that Holloman cannot demonstrate a

---

[5] Holloman also mentions portions of Poston's deposition testimony that allegedly reflect her discipline by the South Carolina Board of Nursing in 2004.  (Pl.'s Resp. Opp'n at 23, ECF No. 40 at 23.)  However, the record before the court does not contain a complete transcript of Poston's deposition, and the excerpts provided do not contain such testimony.

[6] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision:  Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013); Haywood v. Locke, 387 F. App'x at 359; Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).



*prima facie* case of discrimination based on the defendant's failure to promote her because Holloman has failed to forecast evidence to suggest that the defendant's selection of Poston was based on Holloman's race.

Holloman's failure-to-promote claim is also deficient because she cannot show that the defendant's legitimate, nondiscriminatory reason for hiring Poston was a pretext for discrimination. Although Holloman asserts that she was a more qualified candidate for the Nurse Manager position, she fails to present evidence to show that Poston was not also qualified.  See Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 261 (4th Cir. 2006) ("When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer."); see also DeJarnette v. Corning, Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (stating that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer" and that "this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination") (internal quotation marks and citation omitted).

Accordingly, the court concludes that no reasonable jury could find that the defendant rejected Holloman for the Nurse Manager position under circumstances giving rise to an inference of unlawful discrimination.  See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996).  Therefore, the defendant's motion for summary judgment should be granted as to Holloman's race discrimination claim based on the defendant's failure to promote her to a management position.

### b.     Hostile Work Environment

Holloman also appears to assert the creation of a hostile work environment in this case associated with the defendant's:  (1) assignment of patients to Holloman; (2) requirement that Holloman submit a medical excuse each time she was absent from work; and (3) harassing emails. (Compl., ECF No. 1 at 4-5, 8.)  A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  However, "[w]orkplaces are not always harmonious locales."  E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008).  Moreover, federal employment statutes are not "general civility code[s]."  Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998).

Here, to make out a hostile work environment claim under federal anti-discrimination laws, Holloman would have to show that:  "(1) [s]he experienced unwelcome harassment; (2) the harassment was based on [a protected characteristic]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."  See Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006); see also Wells v. Gates, 336 F. App'x 378, 386-87 (4th Cir. 2009) (applying hostile work environment elements discussed in Baqir to a claim of retaliation under Title VII); Fordyce v. Prince George's Cty., 43 F. Supp. 3d 537, 552 n.10 (D. Md. 2014).  Moreover, in a hostile work environment case, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment.  Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746.  When analyzing this element, courts examine the totality of the circumstances,



considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance.  See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

The defendant argues that Holloman has not alleged conduct by the defendant "that rises to the level of being so 'severe' and 'pervasive' as to create an abusive working environment." (Def.'s Mem. Supp. Mot. Summ. J. at 19, ECF No. 34-1 at 19.)  In support of this argument, the defendant provides deposition testimony from Dehlinger, who stated that Holloman was the primary nurse at the Kershaw clinic and responsible for seeing all of the patients.  (Dehlinger Dep. at 25, ECF No. 34-5 at 3.)  Dehlinger testified that other nurses were sent to that facility periodically to help Holloman, and the patient assignment was split alphabetically on those occasions.  (Id.)  The defendant further provides testimony from Poston, who stated that she "identified a clear pattern" of Holloman misusing sick leave and "felt the next step would be [a] memo."  (Poston Dep. at 30, ECF No. 34-26 at 3.) This memorandum, and dated September 16, 2013, stated that a routine review of Holloman's use of sick leave warranted further investigation.  (Sick Leave Mem., ECF No. 40-5 at 2.)  The memorandum further required a doctor's excuse from Holloman for any planned or unplanned sick leave, and indicated that her requests for sick leave would be reviewed until March 17, 2014.  (Id.)



The defendant also provides portions of Holloman's deposition where she testified that she was the only nurse in the Kershaw clinic for "many, many years," but did have an additional nurse at one point for some days of the week. (Holloman Dep. at 30, ECF No. 34-4 at 9.) Holloman testified that patients would have to be rescheduled if Holloman called in sick, and admitted to understanding that the defendant could deny leave requests based on the needs of the clinic. (Id. at 30-31, 52-53, ECF No. 34-4 at 9-10, 11-12.)

In her response in opposition to the defendant's motion for summary judgment, Holloman asserts that she was overworked and had no assistance. (Pl.'s Resp. Opp'n at 18, ECF No. 40 at 18.) Holloman also continues to complain that she was required to provide a physician's note each time she utilized sick leave. (Id.) Holloman asserts that Executive Director Guess subjected Holloman to harsh and intolerable treatment and that she felt intimidated or threatened by Guess. (Id. at 7, 18; ECF No. 40 at 7, 18.) Holloman claims that when she attempted to speak with Guess, he would inquire whether Holloman was sure she wanted "to go down that road." (Holloman Dep. at 88, ECF No. 40-15 at 18.)

While Holloman may have subjectively perceived her workload/assignment of patients, the requirement that she submit a medical excuse for each sick leave absence, Guess's demeanor, and emails from supervisors as constituting a hostile work environment, Holloman has failed to forecast evidence to show a workplace so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Moreover, Holloman fails to forecast sufficient evidence to show that the defendant's actions were the result of her race. See Graham v. Prince George's

Cnty., 191 F. App'x 202, 204 (4th Cir. 2006). Instead, the evidence in the record shows that Holloman was the only nurse at the Kershaw clinic for much of her career, and that the defendant instituted the medical excuse requirement after questions arose regarding Holloman's use of her sick leave. Moreover, to the extent Holloman may be attempting to cobble together a hostile work environment claim based on separate discrete acts of alleged disparate treatment, such as the defendant's failure to promote Holloman or the defendant's investigation into Holloman's billing and documentation practices, she offers no authority suggesting that she can do so in the absence of severe and pervasive abusive conduct based on a protected trait. See Cobbins v. Sch. Bd. of City of Lynchburg, No. 90-1754, 1991 WL 1828, at *3 (4th Cir. Jan 23, 1991) (finding that, "absent evidence that [separate discrete acts of disparate treatment] created, perpetrated or promoted a hostile and abusive environment, they do nothing to buttress a Title VII claim"). Therefore, the court finds that Holloman has failed to establish a *prima facie* case of a hostile work environment based on the record in this case. Accordingly, the court concludes that no reasonable jury could find that the defendant subjected Holloman to a hostile work environment and the defendant's motion for summary judgment should be granted as to that claim.

###     c.     Retaliation

Claims of retaliation are also analyzed under the McDonnell Douglas burden-shifting framework. See Yashenko v. Harrah's NC Casino, Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006). Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). The requisite elements for a *prima facie* case of retaliation typically include: (1) the employee engaged in a protected activity; (2) the employer acted adversely against him or her; and (3) there was a causal connection between the protected



activity and the asserted adverse action.  Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008);
Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

Assuming that Holloman could satisfy the first three elements of a retaliation claim, as
argued by the defendant, she cannot show that any adverse employment action was causally
connected to her engagement in protected activity.  To prove a causal connection, a plaintiff asserting
a retaliation claim must be able to show that her employer took the adverse action "*because* the
plaintiff engaged in a protected activity."  Holland, 487 F.3d at 218 (emphasis in original) (quoting
Dowe v. Total Action Against Poverty in Roanoake Valley, 145 F.3d 653, 657 (4th Cir. 1998)).
Further, a plaintiff must show that but for protected activity, she would not have experienced the
alleged adverse act.  See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533, 2534 (2013)
("Title VII retaliation claims must be proved according to traditional principles of but-for causation,"
which requires "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or
her protected activity was a but-for cause of the alleged adverse action by the employer.").  Thus,
to demonstrate causation, a plaintiff must show that the employer was aware of the protected activity.
See Shield v. Fed. Express Corp., 120 F. App'x 956, 962 (4th Cir. 2005) (citing Luckie v. Ameritech
Corp., 389 F.3d 708, 715 (7th Cir. 2004)).  In certain circumstances, temporal proximity between
the protected activity and the adverse action can be probative of a causal connection.  See Clark Cty.
Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection
based on temporal proximity alone, the time between the employer's knowledge of the protected
activity and the adverse employment action must be "very close" and holding a twenty-month period
to be insufficient).

PJG

In this case, Holloman and the defendant entered into the Mediation Agreement on May 20, 2013. Holloman asserts that the defendant issued her a downgraded performance evaluation in October 2013.[7] (Compl., ECF No. 1-1 at 4-5.) Holloman further asserts that, in November 2013, the defendant: (1) failed to promote Holloman; (2) required Holloman to submit a medical excuse for each sick leave absence; (3) placed Holloman under suspension without pay; and (4) constructively discharged Holloman. (Id. at 5-6.) However, Holloman has offered no evidence from which a reasonable jury could find that the alleged adverse actions are causally connected to the filing of her age and race discrimination charge in October of 2012, or to her entry into a Mediation Agreement with the defendant on May 20, 2013. See Breeden, 532 U.S. 273-74; Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229 (4th Cir. 2006) (per curiam) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment).

Further, as discussed previously, the defendant presents evidence that: (1) their failure to promote Holloman was based on her lack of a four-year degree and lack of recent supervisory experience; (2) their requirement that Holloman provide medical excuses for each sick leave absence was based on issues regarding her perceived misuse of such leave; and (3) their suspension of Holloman, which she asserts constituted a constructive discharge, was based on the results of the Focus Audit Report finding deficiencies in her billing and documentation practices. Holloman has

---

[7] Holloman does not appear to reference this downgraded performance evaluation in her response in opposition. Moreover, the Employee Performance Management System ("EPMS") Evaluation received by Holloman for the period ending on September 2, 2013 does not appear to be downgraded in any manner from the EPMS evaluation Holloman received the previous year. (EPMS Evaluations, ECF Nos. 13, 14.) No other EPMS evaluation from 2013 appears in the record.



presented insufficient evidence to show that the defendant's proffered reasons for their actions were false or were otherwise a pretext for retaliation, see Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010), and has failed to present sufficient evidence from which a reasonable jury could find that the defendant's actions would not have been taken "but for" Holloman's alleged complaints of discriminatory treatment.  See Holland, 487 F.3d at 218.   Therefore, the defendant's motion for summary judgment should be granted as to Holloman's retaliation claim.[8]

### 2.    Breach of Contract with Fraudulent Intent

To establish a breach of contract with fraudulent intent, a plaintiff must show:  "(1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach."  Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (S.C. 2002).  As the court finds that Holloman has failed to present evidence from which a reasonable jury could find a breach of contract in this case, Holloman's breach of contract with fraudulent intent claim fails as a matter of law.   Accordingly, the defendant's motion for summary judgment should be granted as to this claim.

---

[8] The court notes that "[r]etaliation claims under Title VII can be based on an employer's retaliatory creation of a hostile work environment."  Fordyce v. Prince George's Cty., 43 F. Supp. 3d 537, 552 (D. Md. 2014) (citing Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001), overruled on other grounds by White, 548 U.S. at 67-68)).  However, a plaintiff "must show a *prima facie* case for retaliation, including evidence that her employer's adverse actions amount to a hostile work environment."  Id.  As indicated above, Holloman has not established the existence of a hostile work environment in this case.  Therefore, to the extent Holloman may also be alleging retaliatory harassment in this case, such a claim fails as a matter of law.



## RECOMMENDATION

Based on the foregoing, the court recommends that the defendant's motion for summary

judgment be granted (ECF No. 34).

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 19, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).